UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

LAWRENCE M. ZEWIEY,

               Petitioner,

v.                                  Case No:  5:13-cv-449-Oc-10PRL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS
and ATTORNEY GENERAL, STATE OF
FLORIDA,

               Respondents.
_____/

## OPINION AND ORDER

This matter comes before the Court upon an amended petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Lawrence M. Zewiey ("Petitioner"), a prisoner of the Florida Department of Corrections (Doc. 17, filed August 6, 2014).  Petitioner attacks the conviction entered against him by the Fifth Judicial Circuit Court in Citrus County, Florida for sexual battery on a person twelve years of age or older. *Id.* Respondents filed a response to the amended petition (Doc. 20).  Petitioner filed a reply (Doc. 26), and the case is now ripe for review.

Petitioner raises four claims in his amended petition.  He asserts that: (1) trial counsel ("Counsel") was ineffective for failing to move for disqualification of the trial judge; (2) Counsel was ineffective for failing to move to strike a biased juror; (3) Appellate counsel was ineffective for failing to argue on direct appeal that Counsel was ineffective for failing to object to the prosecutor's closing argument; and (4) the trial court erred by denying his claim of newly discovered evidence of a conspiracy to frame him for the sexual battery of which he was convicted (Doc. 17 at 5-46).

Upon due consideration of the pleadings and the state court record, the Court concludes that each claim must be dismissed or denied.  Because the Court may resolve the petition on the basis of the record, an evidentiary hearing is not warranted.  *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I.   Background and Procedural History[1]

On November 6, 2009, the State of Florida charged Petitioner by information with sexual battery with no serious personal injury, in violation of Florida Statute § 794.011(5) (count one) and sexual battery upon a physically helpless person in violation of Florida Statute § 794.011(4)(a) (count two).  After his trial, the jury found Petitioner not guilty on count one and guilty of the lesser included offense of sexual battery on count two (Ex. B).  The trial court sentenced Petitioner to ten years in prison, to be followed by five years of probation. *Id.*  Florida's Fifth District Court of Appeal affirmed Petitioner's conviction and sentence without a written opinion (Ex. E); *Zewiey v. State*, 144 So. 3d 556 (Fla. 5th DCA 2012) (per curiam).

On December 3, 2012, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion"), raising four claims of ineffective assistance of counsel (Ex. F).  The post-conviction court denied each claim in the Rule 3.850 motion in a written order (Ex. G).  Florida's Fifth District Court of Appeal affirmed the post-conviction court's order without a written opinion (Ex. I); *Zewiey v. State*, 112 So. 3d 111 (Fla. 5th DCA 2013) (per curiam).

---

[1] Unless indicated otherwise, citations to appendices or exhibits are to those filed by Respondents on September 10, 2014 (Doc. 21).  Citations to the trial transcript, located in Exhibit C, are cited as (T. at __).

On May 17, 2013, Petitioner filed a state petition for writ of habeas corpus in the Fifth District Court of Appeal, raising two claims of ineffective assistance of appellate counsel (App. J).  On August 23, 2013, Florida's Fifth District Court of Appeal denied the petition without a written opinion (Ex. L).

Petitioner filed his first petition in this Court on September 16, 2013 (Doc. 1).  On December 20, 2013, Petitioner filed his second Rule 3.850 motion in state court in which he raised a claim of newly discovered evidence (Ex. M).  The state court entered an order denying relief on January 16, 2014 (Ex. N).  The denial was affirmed by Florida's Fifth District Court of Appeal on July 8, 2014 (Ex. P); *Zewiey v. State*, 145 So. 3d 865 (Fla. 5th DCA 2014) (per curiam).  Petitioner filed his amended petition in this Court on August 4, 2014 (Doc. 17).

## II.    Governing Legal Principles

### A.    Standard of Review

Pursuant to 28 U.S.C. §§ 2254(d)(1) and (2), federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This standard is both mandatory and difficult to meet.  *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008).  Notably, a state court's violation of <u>state</u> law is not

sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. *White*, 134 S. Ct. at 1702; *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).   That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).   State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case. *White*, 134 S. Ct. at 1706 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 28 U.S.C. § 2254(d)(1).  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner,

*Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406).  The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)).  Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles*, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1*); Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003) ("a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding") (dictum); *Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013) (same).

## B.    Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984).  A petitioner must establish that counsel's performance was deficient and fell below an objective standard of

reasonableness and that the deficient performance prejudiced the defense. *Id.* This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 563 U.S. 170 (2011)).

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89. In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689. Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden to demonstrate prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The foregoing analysis also applies to claims of ineffective assistance of appellate counsel. "A defendant can establish ineffective assistance of appellate counsel by

showing: (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal." *Shere v. Sec'y, Fla. Dep't of Corr.*, 537 F.3d 1304, 1310 (11th Cir. 2008) (citing *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000)).

## C.   Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law.  Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275-76 (1971)). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.  *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998).

In addition, a federal habeas court is precluded from considering claims that are not exhausted and would clearly be barred if returned to state court. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman*, 501 U.S. at 750.  If a petitioner attempts to raise a claim in a manner not

7

permitted by state procedural rules, he is barred from pursuing the same claim in federal court. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994).

A petitioner can avoid the application of procedural default by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged constitutional violation. *Spencer v. Sec' y, Dep't of Corr.*, 609 F.3d 1170, 1179–80 (11th Cir. 2010). To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999); *Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate there is a reasonable probability the outcome of the proceeding would have been different. *Crawford v. Head*, 311 F.3d 1288, 1327–28 (11th Cir. 2002).

A second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "To be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

### III.   <u>Analysis</u>

### A.   Claim One

Petitioner asserts that trial counsel was ineffective for failing to move for disqualification of Judge Howard, who presided over his criminal trial (Doc. 15 at 5).

Specifically, he claims that, thirty years before Petitioner's trial, Judge Howard threatened to put him in jail if he ever appeared in his courtroom. *Id.* He raised this claim in his Rule 3.850 motion where he made the following assertions:

> The Defendant, advised [Counsel] about Judge Richard Howard knowing him since he was a young man living in New England. Lawrence Zewiey was close friends with Judge Richard Howard's son (Thomas Howard), and went to E. Bridgewater High School and used to hang out after school with Thomas (Tom).
>
> On one occasion after school at Judge Howard['s] house on Laurel Street in East Bridgewater, Ma., Thomas and Lawrence was [sic] hanging out in front of Judge Howard's house, and Judge Howard asked, **"who is that with you [T]om"?** Tom answered, *this is my friend Lawrence*, Judge Howard advised Zewiey, **"don't ever come to his courtroom because if you do I'll put you in prison. Is that understood Mr. Zewiey"??** [sic]

(Ex. F at 5) (emphases in original).   Petitioner asserts that he became "enemies" with Judge Howard's son years before his trial and that he understands that "Judge Howard and his son frequently meet and talk, ride bikes together, etc." *Id.* at 7.  Presumably, Petitioner believes that the enmity between himself and Judge Howard's son led to the judge's unfavorable rulings at trial and the imposition of a ten-year prison sentence.[2] Petitioner asserts that he pointed these facts out to Counsel, but that Counsel refused to move to disqualify Judge Howard. *Id.* at 8.  The post-conviction court denied this claim on the ground that it was without factual support and because nothing in the record showed that Petitioner was subject to actual bias or prejudice during his trial or sentencing (Ex. G at 3-4).   Florida's Fifth District Court of Appeal affirmed the post-conviction court's rejection of this claim without a written opinion (Ex. I).   A review of the record and

---

[2] Petitioner does not identify a single unfavorable ruling by Judge Howard that he believes was prompted by bias, nor does he identify any statement by Judge Howard that can be construed as biased.

applicable law supports a conclusion that Claim One was properly rejected by the state courts.

Relief cannot be granted on an ineffectiveness claim unless no reasonable lawyer, faced with the same circumstances, would have acted as Counsel acted. *Rogers v.* Zant, 13 F. 3d 384, 386 (11th Cir. 1994). Reasonable counsel could have refused to move to disqualify Judge Howard because Petitioner's claims regarding his prior interactions with the judge lack any factual support. Indeed, Petitioner's current assertions are perplexing. Although Petitioner claims he was friends with Judge Howard's teenage son thirty years before Petitioner's 2010 trial, reasonable counsel could have concluded that such a relationship was highly improbable. Judge Howard was born in 1953 (making him only ten years older than petitioner), and was 27 years old in 1980 when he allegedly threatened Petitioner with prison. Given his age, it is virtually impossible that Judge Howard had a teenage son who attended high school in Massachusetts with Petitioner in 1980. Moreover, Judge Howard graduated from Stetson College of Law in St. Petersburg, Florida in 1978; was a state trial attorney in Pasco County, Florida from 1979-1985; and continuously practiced law in Florida before he was appointed judge by Governor Jeb Bush in 2000. Nothing in Judge Howard's professional or personal history indicates that he ever practiced law, much less served as a judge, in Massachusetts in 1980 as Petitioner now claims. [3] Reasonable counsel could have concluded that Petitioner misidentified Judge Howard. Therefore, Counsel was not ineffective for failing to move for disqualification of Judge Howard based on Petitioner's obvious confusion.

---

[3] The Court takes judicial notice of, and gleans the information about Judge Howard's background from, the official website of the Fifth Judicial Circuit Court of Florida. *See* http://www.circuit5.org/c5/judges-and-judicial-officers/judges/citrus-county-judges/richard-a-howard-circuit-judge/. Notably, Judge Howard signed the post-conviction motion, and would have been personally aware of Petitioner's allegations and any information available online.

*Diaz v. Sec'y, Fla. Dep't of Corr.*, 402 F.3d 1136, 1142 (11th Cir. 2005) (counsel not ineffective for failing to make a meritless argument).

Given the lack of support for Petitioner's claim, the state court's rejection of Claim One was neither contrary to, nor an unreasonable application of, *Strickland*.  Nor does Petitioner show that the state courts' conclusions were based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Claim One is due to be denied pursuant to 28 U.S.C. § 2254(d).

## B.    Claim Two

Petitioner asserts that Counsel was ineffective for failing to move for disqualification of a juror (Doc. 17 at 5).  Specifically, he claims that Juror Cynthia Weeks told the trial court during voir dire that she did not know Petitioner or the victim, when in fact, "the petitioner himself has personally communicated with Juror Weeks when she accepted his Bills [sic] payments at the Tax Collector's Office." *Id.*  He states that he informed Counsel of Weeks' "dishonesty" but that "Counsel nevertheless failed to make further or deeper inquiries "by questioning Juror Weeks more extensively for findings as to whether she was in fact being *'dishonest'* about not knowing the petitioner or anyone in the court room." *Id.* at 22 (emphasis in original).  Petitioner asserts, without explanation, that Juror Weeks had *"ill motives toward the petitioner"* and Counsel's failure to strike her from the panel "caused [Weeks'] ill motives toward the petitioner to be used to prejudice the entire jury panel against the petitioner, depriving the petitioner of a fair and impartial trial." *Id.* at 22, 23 (emphasis in original).  Petitioner raised this claim in his first Rule 3.850 petition where it was denied by the post-conviction court because Petitioner could not show *Strickland* prejudice.  The court noted that "there were no statements or comments made by the juror that showed clear bias or prejudice.  Defendant has failed to show that

he was prejudiced by the jury that was selected." (Ex. G at 4).   Florida's Fifth District Court of Appeals affirmed the post-conviction court's denial of Claim Two (Ex. I).   A review of the record and applicable law supports the state courts' conclusion that Petitioner cannot demonstrate *Strickland* prejudice from Weeks' selection as a juror.   Moreover, Petitioner has not demonstrated Counsel's deficient performance.

The Sixth Amendment guarantees the accused a trial by an impartial jury in federal criminal prosecutions. U.S. Const. amend VI.   Because "trial by jury in criminal cases is fundamental to the American scheme of justice," the Due Process Clause of the Fourteenth Amendment guarantees the same right to the accused in state criminal prosecutions. *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968).   As with federal law, the test for determining juror competency in the Florida courts is "whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." *Lusk v. State*, 446 So.2d 1038, 1041 (Fla. 1984).

Nothing in the record suggests that Counsel was deficient for failing to strike Juror Weeks from the jury panel.   Each juror was asked by the trial court to provide some background information.   In response, Juror Weeks stated, "My name is Cynthia Weeks. I live in Lecanto.   I am currently a receptionist for the tax collector's office . . . I am not married.   I have no children.   I have no immediate family in law enforcement.   I was summonsed for jury duty back in 2003.   I was here for about two to three hours and then they dismissed me. . . I don't know anybody in the courtroom.   I have never been involved in a trial[.]" (T. at 51-52).   Juror Weeks affirmed that she could follow the court's instructions. *Id.* at 52.

12

Although Petitioner asserted in his Rule 3.850 motion that Weeks lied to the trial court because she was a receptionist for the tax collector and had made small talk with Petitioner when he paid his tax bills, Counsel could have concluded that Weeks simply did not remember Petitioner or the victim.[4]  Because the tax collector's office likely deals with thousands of payments a year, a conclusion that Weeks had no specific recollection of Petitioner or the victim would have been reasonable.  Moreover, that Weeks did not remember Petitioner or the victim does not lead to the automatic conclusion that she harbored ill will towards him or that she could not impartially do her job as a juror. Petitioner has provided no evidence that Weeks had <u>any</u> opinion, positive or negative, of Petitioner or the victim. The Eleventh Circuit has cautioned that courts applying *Strickland* must "defer to trial counsel's performance and eschew the distorting effects of hindsight" when interpreting a prospective juror's statements and trial counsel's decision whether or not to leave that person on the jury. *Harvey v. Warden, Union Correctional Institution*, 629 F.3d 1228, 1247 (11th Cir. 2011) (internal quotation omitted); *see also Babb v. Crosby*, 197 F. App'x 885, 887 (11th Cir. 2006) ("the Supreme Court has not concluded that a lawyer who leaves an arguably biased juror on a jury is *per se* ineffective").  Moreover, "[a]ssessing jurors during voir dire also requires an evaluation of demeanor and credibility. Review of counsel's performance is highly deferential in any case, but the case for deference is even greater when counsel is evaluating credibility." *Bell v. United States*, 351 F. App'x 357, 360 (11th Cir. 2009) (internal citation omitted).  Under these standards, Petitioner has not shown *Strickland* deficient performance.

---

[4] Whether this was Counsel's actual motivation for not challenging Juror Weeks is irrelevant on federal habeas review. *See Castillo v. Sec'y, Fla. Dep't of Corr.*, 722 F.3d 1281, 1285 n.2 (11th Cir. 2013) ("The relevant question under *Strickland*'s performance prong, which calls for an objective inquiry, is whether any reasonable lawyer could have elected not to object for strategic or tactical reasons, even if the actual defense counsel was not subjectively motivated by those reasons.").

Likewise, because empaneled jurors are presumed impartial, to satisfy *Strickland*'s prejudice prong, Petitioner must show that the Juror Weeks was actually biased against him. *Smith v. Phillips*, 455 U.S. 209, 215 (1982); *Rogers v. McMullen*, 673 F.2d 1185, 1189 (11th Cir. 1982) (defendant's Sixth Amendment right to a fair and impartial jury was not violated absent a showing that a jury member hearing the case was actually biased against him).   Other than speculating that Juror Weeks "must" have remembered him from the times he paid his tax bill, and therefore had "ill motives" towards him, Petitioner presents no evidence that Weeks, or any other juror, was actually biased.   Petitioner's unsupported and speculative assertions do not entitle him to habeas relief on this claim. *See Hill v. Lockhart*, 474 U.S. 52 (1985) (conclusory allegations of ineffective assistance of counsel are insufficient to raise a constitutional issue); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).

Petitioner has satisfied neither prong of the *Strickland* ineffectiveness test. Accordingly, the state court's conclusions were neither contrary to, nor an unreasonable application of, *Strickland*.   Nor were they based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.   Petitioner is not entitled to federal habeas corpus relief on Claim Two. 28 U.S.C. § 2254(d).

### C.    Claim Three

Petitioner asserts that appellate counsel was ineffective for failing to argue on direct appeal that Counsel was ineffective for not objecting to the prosecutor's closing argument (Doc. 17 at 18, 24-25).   He believes that Counsel's failure to object to the prosecutor's statements was "clear on the face of the records," and as a result, appellate

counsel should have argued Counsel's ineffectiveness on direct appeal.[5] *Id.* at 26.

Petitioner raised this claim in his state habeas petition where it was denied by Florida's

Fifth District Court of Appeal without a written opinion (Ex. L).

Respondents urge that Claim Three is meritless because "[u]nder Florida law, a

claim of ineffective assistance of trial counsel is not properly made on direct appeal and

should instead be raised in a 3.850 motion, where a hearing could be held to consider

counsel's reasoning and performance." (Doc. 20 at 14) (citing *Colon v. State*, 907 So. 2d

1267, 1269 (Fla. 5th DCA 2005); *McMullen v. State*, 876 So. 2d 589, 590 (Fla. 5th DCA

2004)). Respondents' point is well-taken. Notably, the Florida Supreme Court has

specifically addressed this issue, and concluded that appellate counsel is generally not

ineffective for failing to raise a claim of ineffective assistance of trial counsel on direct

appeal:

> [I]neffective assistance of trial counsel will not be cognizable
> on direct appeal when the issue has not been raised before
> the trial court. There are rare exceptions where appellate
> counsel may successfully raise the issue on direct appeal
> because the ineffectiveness is apparent on the face of the
> record and it would be a waste of judicial resources to require
> the trial court to address the issue. Petitioner asks that we
> expand this exception by holding, in effect, that not only may
> it be raised on direct appeal but that it *must* be raised on direct
> appeal, i.e., appellate counsel is ineffective for failing to do so.
> We decline to do so.

*Blanco v. Wainwright*, 507 So. 2d 1377, 1384 (Fla. 1987) (internal citations omitted); *see*

*also Monroe v. State*, -- So. 3d -- , 2016 WL 1700525, at *6 (Fla. April 28, 2016)

("Appellate courts do not ordinarily address ineffective assistance of counsel concerns

---

[5] Petitioner asserts that the prosecutor improperly vouched for the credibility of the state's witnesses and called Petitioner a liar (Doc. 17 at 25).  Appellate counsel did address, in the brief on direct appeal, the statements to which Petitioner takes exception, but argued that the prosecutor's statements resulted in fundamental error (Ex. D).

until a defendant seeks postconviction relief because such courts are limited to reviewing the record directly before them."). As noted by the *Blanco* court, "[a] proper and more effective remedy is already available for ineffective assistance of trial counsel under rule 3.850. . . [a]ppellate counsel cannot be faulted for preserving the more effective remedy and eschewing the less effective." *Id.*

Petitioner urges that Counsel's errors were clear from the face of the record, and appellate counsel *could* have raised an ineffectiveness claim on direct appeal. While it is true that certain ineffectiveness claims may be raised on direct appeal in limited cases,[6] Plaintiff misunderstands the standard for ineffectiveness under *Strickland*. The standard is not whether appellate counsel *could* have raised this issue on direct appeal under Florida's procedural rules; rather, what the Florida appellate court needed to determine was whether *any* reasonable appellate counsel could have determined that this particular claim of ineffective assistance was best raised in a Rule 3.850 motion. Given the direction from the Florida Supreme Court in *Blanco* and its progeny, reasonable appellate counsel could have determined that Petitioner's ineffective assistance of counsel claim belonged in a Rule 3.850 motion. *See Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995) ("The test for ineffectiveness is not whether counsel could have done more; perfection is not required . . . Nor is the test whether the best criminal defense attorneys might have done more. Instead the test is . . . whether what they did was within the 'wide range of reasonable professional assistance.'") (internal citations omitted).

---

[6] *See, e.g., Monroe,* 2016 WL at *7 ("The failure to properly preserve an otherwise clear error *may* constitute ineffective assistance of counsel cognizable on direct appeal."); *McComb v. State,* 174 So. 3d 1111, 1112-13 (Fla. 2d DCA 2015) (trial counsel's failure to request pertinent jury instruction cognizable on direct appeal); *Larry v. State,* 61 So.3d 1205, 1207 (Fla. 5th DCA 2011) (trial counsel's failure to raise obvious defense that would have otherwise resulted in reduced charge cognizable on direct appeal).

Moreover, under the AEDPA's deferential standards, a federal habeas court must give *both* Counsel and the appellate court the benefit of the doubt. *Burt*, 134 S. Ct. at 13. Petitioner has provided nothing to support his contention that this Court is constitutionally compelled to second-guess the state court's rejection of this claim, and the record does not support such a contention.  Claim Three is denied pursuant to 28 U.S.C. § 2254(d).[7]

### D.    Claim Four

Petitioner asserts that the state court erred by denying his claim of newly discovered evidence (Doc. 17 at 10).  Specifically, he claims that, shortly before he was arrested for rape, his sister, Terry Zinkevitce, overheard her brother, Richard Zewiey (who was also Petitioner's brother), state that he was "gonna get that bastard" because he was angry that Petitioner told the police that Richard used drugs. *Id.* at 36.  The victim then told Richard that she had consensual sex with Petitioner. *Id.*  Terry heard Richard and the victim conspire to "get" Petitioner because he (Petitioner) "took the sex" with the victim. *Id.* at 36-37.  Terry did not believe that "they would do such a thing" and she returned to her home in Massachusetts shortly thereafter. *Id.* at 37.  She told her husband and son Brian about the conversation.  Subsequently, Terry received a call from Richard who told her, "we got the evil bastard, Larry.  I told [the victim] to put a rape charge on Larry, and they arrested Larry, I told you payback is a bitch, ha, ha, ha." *Id.* at 38.  Terry did not report Richard's statement to Counsel or the police because she feared it would implicate Richard in a crime and "she was not sure what she had witnessed was relevant or material." *Id.*  Six months after Petitioner went to prison, Richard died. *Id.* at 39.

---

[7] The state court could have also reasonably concluded that Petitioner suffered no prejudice from appellate counsel's failure to raise this claim on direct appeal because he was not precluded from doing so in a Rule 3.850 motion. Inexplicably, Petitioner did not raise the ineffective assistance claim in his Rule 3.850 motion that he now urges appellate counsel should have raised on direct appeal.  Nor does he attempt to do so in the instant petition.

Subsequently, Brian (Terry's son) told Michael (Petitioner's son) what his mother said. Michael investigated and spoke with Terry who "admits the facts are those plead above [but she] declines to furnish an Affidavit because she said, [sic] does not know how or what needs to be said in it." (Doc. 17 at 39).  Terry told Michael that she would testify if compelled to do so, and did not report what she heard earlier because she did not want to do so while Richard was still alive. *Id.* at 39-40.

Petitioner raised this claim in his second Rule 3.850 motion (Ex. M), where he argued, in terms of state law only, that he was entitled to a new trial pursuant to Rule 3.600(a)(3) of the Florida Rules of Criminal Procedure. *Id.*  The post-conviction court denied the claim on the ground that the "conspirators'" statements were not "newly discovered" evidence since Petitioner or counsel could have discovered them with the use of diligence (Ex. N).  The court also concluded that the evidence was not of "such a nature that it would probably produce an acquittal at trial." *Id.*  On appeal, Petitioner argued, again in terms of state law only, that the post-conviction court erred by failing to hold an evidentiary hearing on his second Rule 3.850 motion (Ex. O).  The appellate court denied the claim without a written opinion (Ex. P).

Respondents urge that Claim Four is unexhausted because Petitioner did not apprise the state court of the federal constitutional issue involved (Doc. 20 at 8).  Indeed, although Petitioner made a passing reference to constitutional due process in his second Rule 3.850 motion and in his brief on appeal, the sole arguments discussed in both pleadings were Petitioner's entitlement to a new trial under state law and the state court's errors in denying this claim without an evidentiary hearing (Ex. M; Ex. O).  For a habeas petitioner to fairly present a federal claim to state courts:

> It is not sufficient merely that the federal habeas petitioner has
> been through the state courts . . . nor is it sufficient that all the

> facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made. Rather, in order to ensure that state courts have the first opportunity to hear all claims, federal courts "have required a state prisoner to present the state courts with the same claim he urges upon the federal courts." While we do not require a verbatim restatement of the claims brought in state court, we do require that a petitioner presented his claims to the state court "such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.

*McNair v. Campbell*, 416 F.3d 1291, 1302–03 (11th Cir. 2005) (internal citations omitted).

As part of such a showing, the claim presented to the state courts "must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." *Reedman v. Thomas*, 305 F. App'x 544, 545–46 (11th Cir. 2008) (internal citation omitted).   Because he did not provide a "statement of the facts" showing how this particular claim implicated due process concerns in either his second Rule 3.850 motion or his brief on appeal, Petitioner's federal due process challenge to the denial of Claim Four is unexhausted.   Petitioner does not satisfy (or even allege) the cause and prejudice, or fundamental miscarriage of justice exceptions to overcome the procedural default of this claim.   Florida's procedural rules and time limitations preclude a second appeal. Fla. R. App. P. 9.140(b)(3) (defendant wishing to appeal a final judgment must do so within "30 days following rendition of a written order").   Consequently, Petitioner's claim cannot be considered by this Court and is due to be dismissed.

Even had Petitioner properly exhausted this claim, he is not entitled to habeas corpus relief. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.").   First, to the extent Petitioner now argues that the trial court violated Florida law when it denied his claim of newly discovered evidence without first holding an evidentiary hearing, the claim must fail.   "In conducting

habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *see also* 28 U.S.C. § 2254(a).  Accordingly, the Court may not grant habeas relief based on an alleged error in the interpretation or application of state law. *Estelle*, 502 U.S. at 68; *Dugger v. Adams*, 489 U.S. 401, 409 (1989) ("[T]he availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution.").  Thus, any argument that the trial court erred under Florida law when it failed to grant a new trial or conduct an evidentiary hearing on Petitioner's claim of newly discovered evidence is not cognizable on federal habeas review.[8]

Next, even assuming *arguendo* that Richard's alleged statements are admissible "newly discovered evidence," Petitioner has identified no Supreme Court case holding that a state court's rejection of a newly discovered evidence claim in similar circumstances is unconstitutional.  This is fatal to Claim Four because Petitioner cannot show how the state courts' conclusions were contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1).  To the contrary, it is well understood in the federal courts that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal

---

[8] The Court also notes that Terry's testimony about the conversations overheard between the victim and Richard, and Richard's statements to Terry would probably be inadmissible hearsay at a retrial.  *See* Florida Statute §§ 90.801-.806.  Accordingly, Terry's testimony could not be "of such a nature that it would probably produce an acquittal on retrial." *Jones v. State*, 709 So. 2d 512, 521 (1998); *Schexneider v. State*, 793 So. 2d 1076, 1077 (Fla. 1st DCA 2001) (motion alleging newly discovered evidence was legally insufficient where evidence constituted inadmissible hearsay).  Moreover, to the extent Petitioner argues the statements are admissible to impeach the trial testimony of Richard and the victim, federal courts have generally held that evidence that is merely cumulative or impeaching does not warrant a new trial. *See, e.g.*, *United States v. Garcia*, 13 F.3d 1464, 1472 (11th Cir. 1994) ("Newly discovered impeaching evidence is unworthy of a new trial."); *United States v. Champion*, 813 F.2d 1154, 1171 (11th Cir. 1987) ("Newly discovered impeaching evidence is insufficient to warrant a new trial.").

proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *Swindle v. Davis*, 846 F.2d 706, 707 (11th Cir.1988) (denying federal habeas corpus relief where petitioner presented evidence not previously known to prosecutors at his trial that someone else committed manslaughter); *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002) ("It is not our role to make an independent determination of a petitioner's guilt or innocence based on evidence that has emerged since the trial. 'This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact.'") (quoting *Herrera*, 506 U.S. at 400).  Petitioner alleges no independent constitutional violation relating to Terry's statements, and he is therefore not entitled to federal habeas relief on this claim.

 The state court's rejection of Claim Four was neither contrary to, nor based upon an unreasonable application of *Herrera* or any other clearly established federal law and was not based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.   In addition to being unexhausted and procedurally barred, Claim Four is due to be denied pursuant to 28 U.S.C. § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.    <u>Certificate of Appealability</u>[9]

Petitioner is not entitled to a certificate of appealability.   A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).   Rather, a district court must first issue a certificate of

---

[9] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." <u>Id.</u>  As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

appealability ("COA").  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El v. Cockrell*, 537 U.S. 322, 335–36 (2003). Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

### V.    Conclusion

Based on the reasons set forth in this Order, Petitioner's 28 U.S.C. § 2254 petition is **DENIED with prejudice.**  Petitioner is denied a certificate of appealability.  The Clerk of Court is directed to terminate any pending motions, close the file, and enter judgment accordingly.

**DONE** and **ORDERED** in Ocala, Florida on May 13, 2016.


_____
UNITED STATES DISTRICT JUDGE


SA: OrlP-4

Copies to:  Lawrence M. Zewiey
Counsel of Record